**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**THE SAMUEL LAW FIRM**
Michael Samuel (MS 7997)
1441 Broadway
Suite 6085
New York, New York 10018
(212) 563-9884
michael@thesamuellawfirm.com

Attorneys for Plaintiffs, Individually
and on behalf of all others similarly
situated

| | |
|---|---|
| Jose Edwin Calderon, Rudis Omar Calderon a/k/a Rudies Calderon and a/k/a Omar Calderon, Julio Cesar Velasquez, Olmar Manuel Velasquez a/k/a Holman Velasquez, Olvin Onan Velasquez, Misael Velasquez, on behalf of themselves and all other persons similarly situated, <br><br> *Plaintiffs,* <br><br> - vs. – <br><br> Little Mario's Pizza Inc. d/b/a Mario's Restorante and Pizzeria and d/b/a Mario's Pizzeria, Demetres Spanos a/k/a Demitri, and Basily DOE, <br><br> *Defendants.* | **DOCKET NO. 2:26-cv-01264** <br><br><br> **COMPLAINT** <br><br> **COLLECTIVE ACTION** |

Plaintiffs Jose Edwin Calderon, Rudis Omar Calderon a/k/a Rudies Calderon and a/k/a Omar Calderon, Julio Cesar Velasquez, Olmar Manuel Velasquez a/k/a Holman Velasquez, Olvin Onan Velasquez, Misael Velasquez (hereinafter collectively referred to as "Plaintiffs"), on behalf of themselves and all other persons similarly situated, by and through their undersigned attorneys, for

1

their complaint against Defendants Little Mario's Pizza Inc. d/b/a Mario's Restorante and Pizzeria and d/b/a Mario's Pizzeria, Demetres Spanos a/k/a Demitri, and Basily DOE (hereinafter collectively referred to as "Defendants"), allege as follows:

**<u>NATURE OF THE ACTION</u>**

2.    Plaintiffs, on behalf of themselves and all other persons similarly situated, current and former employees of Defendants, who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), allege that they are entitled to from Defendants, jointly and severally: (i) compensation for unpaid wages for overtime work for which they did not receive overtime premium pay as required by law, and (ii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because Defendants' violations were willful lacked a good faith basis.

3.    Plaintiffs further complain that they are entitled to recover from Defendants: (i) back wages for unpaid minimum wage, and overtime premium for overtime work, each of which Defendants willfully failed to pay as required by the New York Labor Law §§ 650 et seq. ("NYLL") and the supporting New York State Department of Labor regulations; (ii) unpaid spread-of-hours compensation for shifts worked lasting in excess of 10 hours from start to finish in violation of the NYLL; (iii) liquidated damages pursuant to the NYLL for these violations; and (iv) statutory damages for Defendants' violations of the Wage Theft Prevention Act, each of which

violations caused Plaintiffs financial harm.

**THE PARTIES**

4.    Jose Edwin Calderon (hereinafter referred to as "Plaintiff Jose Calderon") is an adult individual residing in Uniondale, New York.

5.    Plaintiff Jose Calderon consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b).

6.    Plaintiff Rudis Omar Calderon, a/k/a Rudies Calderon, a/k/a Omar Calderon (hereinafter referred to as "Plaintiff Omar Calderon") is an adult individual residing in Uniondale, New York.

7.    Plaintiff Omar Calderon consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b).

8.    Plaintiff Julio Cesar Velasquez (hereinafter referred to as "Plaintiff Julio Velasquez") is an adult individual residing in Hempstead, New York.

9.    Plaintiff Julio Velasquez consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b).

10.    Plaintiff Olmar Manuel Velasquez a/k/a Holman Velasquez (hereinafter referred to as "Plaintiff Olmar Velasquez") is an adult individual residing in Hempstead, New York.

11.    Plaintiff Olmar Velasquez consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b).

12.    Plaintiff Olvin Onan Velasquez (hereinafter referred to as "Plaintiff Olvin Velasquez") is an adult individual residing in

3

Plainview, New York.

13.  Plaintiff Olvin Velasquez consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b).

14.  Plaintiff Misael Velasquez is an adult individual residing in Huntington Station, New York.

15.  Plaintiff Misael Velasquez consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b).

16.  Little Mario's Pizza Inc. d/b/a Mario's Restorante and Pizzeria and d/b/a Mario's Pizzeria (hereinafter referred to as "Little Mario's Pizza Inc.") is a domestic business corporation organized under the law of the State of New York with a principal places of business at 635 Old Country Rd, Plainview, NY 11803 and 659 Old Country Rd, Plainview, NY 11803.

17.  At all relevant times, Defendant Little Mario's Pizza Inc. has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

18.  Upon information and belief, at all relevant times, Defendant Little Mario's Pizza Inc. has had gross revenues in excess of $500,000.00.

19.  Upon information and belief, at all relevant times herein, Defendant Little Mario's Pizza Inc. has used goods and materials produced in interstate commerce and has employed at least two individuals who handled such goods and materials.

4

20. Defendant Demetres Spanos a/k/a Demitri (hereinafter referred to as "Defendant Spanos") is an adult individual, residing in this district, and, at all times relevant herein, is/was an owner or part owner and principal of Little Mario's Pizza Inc. and/or a manager of the business who has/had the power to hire and fire employees, set wages and work schedules, and maintain their records, including those of Plaintiffs.

21. At all relevant times, Defendant Spanos was involved in the day-to-day operations of Little Mario's Pizza Inc. and played an active role in managing the business, scheduling, supervising and paying Plaintiffs during their employment by Defendants.

22. Defendant Basily DOE (hereinafter referred to as "Defendant Basily") is an adult individual, residing in this district, and, at all times relevant herein, is/was an owner or part owner and principal of Little Mario's Pizza Inc. and/or a manager of the business who has/had the power to hire and fire employees, set wages and work schedules, and maintain their records, including those of Plaintiffs.

23. At all relevant times, Defendant Basily DOE was involved in the day-to-day operations of Little Mario's Pizza Inc. and played an active role in managing the business, scheduling, supervising and paying Plaintiffs during their employment by Defendants.

24. At all relevant times herein, Defendants each constituted an "employer" of Plaintiffs as that term is used in the Fair Labor

Standards Act and New York Labor Law.

## JURISDICTION AND VENUE

25.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

26.   In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

27.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## COLLECTIVE ACTION ALLEGATIONS

28.   Pursuant to 29 U.S.C. § 206 and § 207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of a collective group of persons defined as follows:

> All persons who are or were formerly employed by Defendants in the United States at any time since March 4, 2020, to the entry of judgment in this case (the "Collective Action Period"), who were restaurant employees, and who were not paid statutory minimum wages and/or overtime compensation at rates at least one-and-one-half times the regular rate of pay for hours worked in excess of forty hours per workweek(the "Collective Action Members").

29.   The Collective Action Members are similarly situated to

6

Plaintiffs in that they were employed by Defendants as non-exempt employees and were denied payment at the statutory minimum wage, overtime premium pay for hours worked beyond forty hours in a week and spread-of-hours premium pay for hours worked a shift lasting in excess of ten hours from start to finish.

30. The Collective Action Members are further similarly situated to Plaintiffs in that Defendants had a policy and practice of knowingly and willfully refusing to pay their employees, including Plaintiffs, the statutory minimum wage, the overtime and spread-of-hours premiums.

31. Plaintiffs and the Collective Action Members perform or performed the same or similar primary duties and were subjected to the same policies and practices by Defendants.

32. The exact number of such individuals is presently unknown but is known by Defendants and can be ascertained through appropriate discovery.

33. Defendants suffered and permitted Plaintiffs, and each of the Collective Action Members, to regularly work more than forty hours per week without appropriate overtime compensation.

34. Defendants' unlawful conduct herein has been widespread, repeated, and consistent.

35. Defendants had knowledge that Plaintiffs and the Collective Action Members regularly performed work requiring overtime pay.

36.  Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs, as well as each of the Collective Action Members.

**FACTS**

37.  At all relevant times herein, Defendants Little Mario's Pizza Inc., Spanos and Basily owned and operated two Italian restaurants Mario's Restorante and Pizzeria, located at 635 Old Country Rd, Plainview, NY (hereinafter, "Mario's Restorante"), and Mario's Pizzeria located at 659 Old Country Rd, Plainview, NY (hereinafter, "Mario's Pizzeria") (hereinafter collectively, "Mario's Restaurants").

**Plaintiff Jose Calderon.**

38.  Plaintiff Jose Calderon was employed by Defendants at Mario's Pizzeria from approximately 2003 to May 2023, with duties that included making deliveries, packing boxes, preparing salads, stocking sodas, and working at the counter.

39.  At all relevant times herein, Plaintiff Jose Calderon's work by Defendants at Mario's Pizzeria was performed in the normal course of Defendants' business, was integrated into their business, and did not involve executive or administrative responsibilities.

40.  At all relevant times herein, while employed by Defendants at Mario's Pizzeria, Plaintiff Jose Calderon was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

8

41.  From 2018 to March 2020, Plaintiff Jose Calderon worked a regular schedule of six days per week as follows: Monday from 11:00 a.m. to 10:00 p.m.; Tuesday, Thursday and Sunday from 11:00 a.m. to 8:00 p.m.; on Wednesday he worked two shifts from 11:00 a.m. to 2:00 p.m. and again from 5:00 p.m. to 8:00 p.m.; and Friday he also worked two shifts from 11:00 a.m. to 2:00 p.m. and again from 4:00 p.m. to 10:30 p.m.; with Saturday off; totaling approximately 53.5 hours per week.

42.  From March 2020 to May 2023, Plaintiff Jose Calderon worked a regular schedule of six days per week as follows: Monday from 11:00 a.m. to 10:00 p.m.; Tuesday, Thursday and Sunday from 11:00 a.m. to 8:00 p.m.; Wednesday he worked two shifts from 11:00 a.m. to 2:00 p.m. and again from 5:00 p.m. to 8:00 p.m.; and on Friday he also worked two shifts from 11:00 a.m. to 2:00 p.m. and again from 4:00 p.m. to 9:30 p.m.; with Saturday off; totaling approximately 52.5 hours per week.

43.  During his employment with Defendants at Mario's Pizzeria, Plaintiff Jose Calderon was paid by Defendants weekly, in cash as follows. From 2019 to December 2022, he was paid the hourly rate of $10 per hour. From January 2023 to May 2023, he was paid the hourly rate of $12.50 per hour.

44.  As a result, Plaintiff Jose Calderon's effective rates of pay were below the statutory New York City minimum wage in effect at relevant times.

45. Throughout his employment with Defendants at Mario's Pizzeria, Plaintiff Jose Calderon never got paid by Defendants any extra pay for overtime work for hours worked beyond 40 hours in a workweek.

46. Throughout his employment with Defendants at Mario's Pizzeria, plaintiff Jose Calderon never got paid by Defendants an additional hourly pay for each day he worked a shift lasting in excess of 10 hours from start to finish.

47. Throughout his employment with Defendants at Mario's Pizzeria, Plaintiff Jose Calderon received no paystubs or wage statements of any sort.

**Plaintiff Omar Calderon.**

48. Plaintiff Omar Calderon was employed by Defendants at Mario's Pizzeria from approximately August 2005 to February 3, 2023, with duties that included making deliveries, packing boxes, preparing salads and stocking sodas.

49. At all relevant times herein, Plaintiff Omar Calderon's work by Defendants at Mario's Pizzeria was performed in the normal course of Defendants' business, was integrated into their business, and did not involve executive or administrative responsibilities.

50. At all relevant times herein, while employed by Defendants at Mario's Pizzeria, Plaintiff Omar Calderon was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

51. From June 2018 through March 2020, Plaintiff Omar Calderon worked a regular schedule of six days per week, from Tuesday to Sunday, with Mondays off as follows. He worked two shifts on Tuesday and Thursday, from 11:00 a.m. to 2:00 p.m. and again from 5:00 p.m. to 10:00 p.m.; on Wednesday from 11:00 a.m. to 10:00 p.m.; on Friday from 11:00 a.m. to 9:00 p.m.; on Saturday from 11:00 a.m. to 10:30 p.m.; and on Sunday from 12:00 p.m. to 10:00 p.m.

52. Consequently, from June 2018 through March 2020, Plaintiff Omar Calderon was typically working at Mario's Pizzeria - 58,5 hours per week.

53. From March 2020 to February 3, 2023, Plaintiff Omar Calderon worked a regular schedule of six days per week, from Tuesday to Sunday, with Mondays off as follows. He worked two shifts on Tuesday and Thursday, from 11:00 a.m. to 2:00 p.m. and again from 5:00 p.m. to 9:00 p.m.; on Wednesday from 11:00 a.m. to 9:30 p.m.; on Friday from 11:00 a.m. to 9:00 p.m.; on Saturday from 11:00 a.m. to 10:30 p.m.; and on Sunday from 12:00 p.m. to 9:00 p.m.

54. Consequently, from March 2020 to February 3, 2023, Plaintiff Omar Calderon was typically working at Mario's Pizzeria - 55 hours per week.

55. During his employment with Defendants at Mario's Pizzeria, Plaintiff Omar Calderon was paid by Defendants weekly, in cash as follows. From 2018 to December 2019, he was paid at the hourly rate of $7.50 per hour. From January 2020 to February 3,

2023, he was paid at the hourly rate of $10 per hour.

56.  As a result, Plaintiff Omar Calderon's effective rates of pay were below the statutory New York City minimum wage in effect at relevant times.

57.  Throughout his employment with Defendants at Mario's Pizzeria, Plaintiff Omar Calderon never got paid by Defendants any extra pay for overtime work for hours worked beyond 40 hours in a workweek.

58.  Throughout his employment with Defendants at Mario's Pizzeria, Plaintiff Omar Calderon never got paid by Defendants an additional hourly pay for each day he worked a shift lasting in excess of 10 hours from start to finish.

59.  Throughout his employment with Defendants, Plaintiff Omar Calderon received no accurate and sufficient pay stubs or wage statements.

**Plaintiff Julio Velasquez.**

60.  Plaintiff Julio Velazquez was employed by Defendants at Mario's Restaurants from approximately October 2019 to August 13, 2024, with duties that included making deliveries, packing boxes, preparing salads, stocking sodas, and washing dishes.

61.  At all relevant times herein, Plaintiff Julio Velazquez's work by Defendants at Mario's Restaurants was performed in the normal course of Defendants' business, was integrated into their business, and did not involve executive or administrative

responsibilities.

62.    At all relevant times herein, while employed by Defendants at Mario's Restaurants, Plaintiff Julio Velazquez was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

63. During his employment for Defendants at Mario's Restaurants, Plaintiff Julio Velazquez worked a regular schedule of six days per week, Monday, Tuesday, Wednesday and Sunday, from 11:00 a.m. to 9:00 p.m.; and Friday and Saturday from 11:00 a.m. to 9:30 p.m.; with Thursdays off; totaling approximately 61 hours per week.

64.    From the start of his employment at Mario's Restaurants until December 2023, Plaintiff Julio Velazquez was paid by Defendants weekly, via direct deposit, for only 40 work hours per week at the hourly rate of $12.50. In addition, Defendants deducted six (6) hours per week for meal breaks from his payment.

65.    From January 2024 to August 13, 2024, Plaintiff Julio Velazquez was paid by Defendants weekly by check or via direct deposit, at the regular hourly rate of $16. During this period of his employment, Plaintiff was paid for only 2 to 10 overtime hours per week, at the overtime rate $24 per hour.

66.    As a result, Plaintiff Julio Velazquez's effective rates of pay were sometimes below the statutory New York City minimum wage in effect at relevant times.

67.    From the start of his employment at Mario's Restaurants

until December 2023, Plaintiff Julio Velazquez never got paid by Defendants any extra pay for overtime work for hours worked beyond 40 hours in a workweek. From January 2024 to August 13, 2024, Plaintiff Julio Velazquez was paid overtime premiums for only some, but not all, of the overtime hours he worked.

68.   Throughout his employment with Defendants at Mario's Restaurants, Plaintiff Julio Velazquez never got paid by Defendants an additional hourly pay for each day he worked a shift lasting in excess of 10 hours from start to finish.

69.   Throughout his employment with Defendants, Plaintiff Julio Velazquez received no accurate and sufficient paystubs or wage statements.

**Plaintiff Olmar Velasquez.**

70.   Plaintiff Olmar Velazquez has been employed by Defendants at Mario's Pizzeria from approximately November 2021 till present, with duties that included making deliveries, packing boxes, preparing salads, stocking sodas, and washing dishes.

71.   At all relevant times herein, Plaintiff Olmar Velazquez's work by Defendants at Mario's Pizzeria was performed in the normal course of Defendants' business, was integrated into their business, and did not involve executive or administrative responsibilities.

72.   At all relevant times herein, while employed by Defendants at Mario's Pizzeria, Plaintiff Olmar Velazquez was an employee engaged in commerce and/or in the production of goods for commerce,

14

as defined in the FLSA and its implementing regulations.

73.  From November 2021 to December 31, 2023, Plaintiff Olmar Velazquez worked a regular schedule of six days per week as follows: Monday, Tuesday, Wednesday and Sunday, from 11:00 a.m. to 9:00 p.m.; and Friday and Saturday from 11:00 a.m. to 9:30 p.m., with Thursdays off; totaling approximately 61 hours per week.

74.  From January 1, 2024, to present, Plaintiff Olmar Velazquez worked a regular schedule of six days per week as follows: Monday, Tuesday and Wednesday, from 10:30 a.m. to 8:00 p.m.; and Friday, Saturday and Sunday, from 11:00 a.m. to 9:00 p.m., with Thursdays off; totaling approximately 58.5 hours per week.

75.  From start of his employment at Mario's Pizzeria, in November 2021 till December 31, 2023, Plaintiff Olmar Velazquez was paid by Defendants weekly, via direct deposit, for only 40 work hours per week at the hourly rate of $15. In addition, Defendants deducted six (6) hours per week for meal breaks from his payment.

76.  From January 2024 to June 2025, Plaintiff Olmar Velazquez was paid by Defendants weekly by check or via direct deposit, at the regular hourly rate of $16. During this period of his employment, Plaintiff was paid for only 2 to 10 overtime hours per week, at the overtime rate $24 per hour.

77.  From June 2025 and up to the present, Plaintiff Olmar Velazquez has been paid by Defendants weekly by check or via direct deposit, at the regular hourly rate of $18. During this period of

15

his employment, Plaintiff has been paid for only 2 to 10 overtime hours per week, at the overtime rate $24.75 per hour.

78. As a result, Plaintiff Olmar Velazquez's effective rates of pay were sometimes below the statutory New York City minimum wage in effect at relevant times.

79. From the start of his employment at Mario's Pizzeria until December 2023, Plaintiff Olmar Velazquez never got paid by Defendants any extra pay for overtime work for hours worked beyond 40 hours in a workweek. From January 2024 to present, Plaintiff Olmar Velazquez has been paid overtime premiums for only some, but not all, of the overtime hours he worked.

80. Throughout his employment with Defendants at Mario's Pizzeria, Plaintiff Olmar Velazquez never got paid by Defendants an additional hourly pay for each day he worked a shift lasting in excess of 10 hours from start to finish.

81. Throughout his employment with Defendants, Plaintiff Olmar Velazquez received no accurate and sufficient pay stubs or wage statements.

**Plaintiff Olvin Velasquez.**

82. Plaintiff Olvin Velazquez was employed by Defendants at Mario's Pizzeria from approximately October 2022 till July 2024, with duties that included cook helping, making deliveries, packing boxes, stocking sodas, and washing dishes.

83. At all relevant times herein, Plaintiff Olvin Velazquez's

16

work by Defendants at Mario's Pizzeria was performed in the normal course of Defendants' business, was integrated into their business, and did not involve executive or administrative responsibilities.

84.  At all relevant times herein, while employed by Defendants at Mario's Pizzeria, Plaintiff Olvin Velazquez was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

85.  From October 2022 to January 2024, Plaintiff Olvin Velazquez worked at Mario's Pizzeria a regular schedule of six days per week, Monday, Wednesday, Thursday and Sunday, from 11:00 a.m. to 9:00 p.m.; Friday and Saturday from 11:00 a.m. to 9:30 p.m.; with Tuesdays off; totaling approximately 61 hours per week.

86.  From January 2024 to July 2024, Plaintiff Olvin Velazquez worked at Mario's Pizzeria a regular schedule of five days per week, Monday, Wednesday and Thursday from 11:00 a.m. to 9:00 p.m.; and Friday and Saturday from 11:00 a.m. to 9:30 p.m.; with Tuesdays and Sundays off; totaling approximately 46 hours per week.

87.  Throughout his employment with Defendants at Mario's Pizzeria, Plaintiff Olvin Velazquez was paid by Defendants weekly, initially in cash during the first year of his employment, and thereafter by check, at the hourly rate of $15. In addition, Defendants deducted six (6) hours per week for meal breaks from his payment.

88.  As a result, Plaintiff Olvin Velazquez's effective rates

of pay were sometimes below the statutory New York City minimum wage in effect at relevant times.

89. During his employment at Mario's Pizzeria, Plaintiff Olvin Velazquez never got paid by Defendants any extra pay for overtime work for hours worked beyond 40 hours in a workweek.

90. Throughout his employment with Defendants at Mario's Pizzeria, Plaintiff Olvin Velazquez never got paid by Defendants an additional hourly pay for each day he worked a shift lasting in excess of 10 hours from start to finish.

91. Throughout his employment with Defendants, Plaintiff Olvin Velazquez never received paystubs or wage statements of any sort.

**Plaintiff Misael Velasquez.**

92. Plaintiff Misael Velazquez has been employed at Mario's Pizzeria, from approximately September 2019, up to the present, with duties that included packing boxes, preparing salads and pizzas, and working at the counter.

93. Plaintiff Misael Velazquez was employed as a salad preparer, preparing the boxes, counter and making pizzas.

94. Plaintiff Misael Velazquez's work was performed in the normal course of Defendant's business, was integrated into the business of defendant, and did/does not involve executive or administrative responsibilities.

95. At all relevant times herein, Plaintiff Misael Velazquez

18

was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

96. During his employment with Defendants at Mario's Pizzeria, Plaintiff Misael Velazquez has worked a regular schedule of five days per week, Monday, Tuesday, Thursday, Friday, Saturday and Sunday, from 10:00 a.m. until 11:30 p.m.; with Wednesdays off; totaling approximately 81 hours per week.

97. During his employment with Defendants at Mario's Pizzeria, Plaintiff Misael Velazquez has been paid weekly, initially in cash until December 2023, and thereafter, beginning in January 2024 via paystubs, as follows: $9.80 per hour in 2019; $10.98 per hour in 2020; $12.87 per hour in 2021 and 2022; $15.15 per hour in 2023; and $22 per hour from 2024 and through the present.

98. As a result, Plaintiff Misael Velazquez's effective rates of pay were sometimes below the statutory New York City minimum wage in effect at relevant times.

99. Throughout his employment with Defendants at Mario's Pizzeria, Plaintiff Misael Velazquez never got paid by Defendants an additional hourly pay for each day he worked a shift lasting in excess of 10 hours from start to finish.

100. From the start of his employment at Mario's Pizzeria until December 2023, Plaintiff Misael Velazquez never got paid by Defendants any extra pay for overtime work for hours worked beyond

40 hours in a workweek. From January 2024 to present, Plaintiff Misael Velazquez has been paid overtime premiums for only some, but not all, of the overtime hours he worked.

101. Throughout his employment with Defendants, Plaintiff Misael Velazquez received no accurate and sufficient pay stubs or wage statements.

**<u>Defendants' General Unlawful Employment Practices</u>**

102. As a result, each Plaintiffs' effective rates of pay were sometimes below the statutory New York City minimum wage in effect at relevant times.

103. Defendants' failure to pay each Plaintiff an amount at least equal to the New York City minimum wage in effect during relevant time periods was willful and lacked a good faith basis, because Defendants set Plaintiffs' compensation and have been aware that they were not compensating Plaintiffs at the applicable New York State minimum wage, during their employment for Defendants.

104. In addition, Defendants failed to pay each Plaintiff overtime "bonus" for hours worked beyond 40 hours in a workweek, in violation of the FLSA, the New York Labor Law, and the supporting New York State Department of Labor regulations.

105. Defendants' failure to pay each Plaintiff the overtime bonus for overtime hours they each worked was willful and lacked a good faith basis, because Defendants set Plaintiffs' work schedules and were aware that Plaintiffs have typically been working in excess

of 40 hours per week, during their employment by Defendants.

106. Defendants also failed to pay each Plaintiff an additional hour's pay at the minimum wage for each day they worked a shift lasting longer than ten hours from start to finish ("spread-of-hours premium"), in violation of the NYLL and supporting regulations.

107. Defendants' failure to pay Plaintiffs the spread-of-hours compensation was willful and lacked a good faith basis, because Defendants set Plaintiffs' work schedules and were aware that they have been working shifts in excess of ten hours in length during their employment by Defendants.

108. Defendants also failed to provide each Plaintiff with a written notice providing the information required by the Wage Theft Prevention Act – including, *inter alia*, Defendants' contact information, the regular and overtime rates, and intended allowances claimed – and failed to obtain each Plaintiff's signature acknowledging the same, upon each Plaintiff's hiring or at any time thereafter, in violation of the Wage Theft Prevention Act in effect at the time.

109. This failure has harmed Plaintiffs financially by depriving them of being informed of their lawfully applicable rates of pay during their employment by Defendants.

110. Plaintiffs have received no paystubs or wage statements of any sort with their pay during their employment by Defendants or

the provided paystubs and wage statement were inaccurate and insufficient.

111. This failure has caused him financial harm as a result of Plaintiffs not being informed of the actual amount they have been paid on an hourly basis, and the lawfully applicable rates of pay owed them at all relevant times herein.

112. Defendants failed to provide each Plaintiff with weekly records reflecting his total compensation and total hours worked, in violation of the Wage Theft Prevention Act, causing Plaintiffs financial harm resulting from the failure of Defendants to inform Plaintiffs of their hours worked and hours paid.

113. Upon information and belief, throughout each of Plaintiffs' employment period, both before that time (throughout the Collective Action Period) and continuing until today, Defendants have likewise employed other individuals like Plaintiffs (the "Collective Action Members") in positions at Defendants' restaurants that required little skill, no capital investment, and with duties and responsibilities that did not include any managerial responsibilities or the exercise of independent judgment.

114. Defendants applied the same employment policies, practices, and procedures to all Collective Action Members, including policies, practices, and procedures with respect to the payment of minimum wages, overtime and spread-of-hours premiums.

115. Upon information and belief, Defendants have failed to

pay these other individuals at a rate at least equal to the minimum wage, in violation of the FLSA and the New York Labor Law.

116. Upon information and belief, these other individuals have worked in excess of forty hours per week, yet Defendants have likewise failed to pay them overtime compensation of one-and-one-half times their regular hourly rate in violation of the FLSA and the New York Labor Law.

117. Upon information and belief, these other individuals were not provided with required and accurate wage notices or weekly wage statements as specified in New York Labor Law §§ 195.1, 195.3, and the Wage Theft Prevention Act.

118. Upon information and belief, while Defendants employed Plaintiffs and the Collective Action Members, and through all relevant time periods, Defendants failed to maintain accurate and sufficient time records or provide accurate records to employees.

119. Upon information and belief, while Defendants employed Plaintiffs and the Collective Action Members, and through all relevant time periods, Defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA or New York Labor Law.

120. This failure caused Plaintiff Gonzalez financial harm resulting from his not being informed as required by law of the applicable regular and overtime rates of pay due to him from Defendants.

## COUNT I

## Violations of the Fair Labor Standards Act
### (Failure to Pay Overtime Compensation)

121. Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

122. At all relevant times, Defendants employed Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

123. At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their employees for hours they worked in excess of forty hours per workweek, including Plaintiff and the Collective Action Members.

124. As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and the Collective Action Members, at a rate at least one-and-one-half times the regular rate of pay for work performed in excess of forty hours per workweek, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

125. The foregoing conduct, as alleged, constituted a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacked a good faith basis within the meaning of 29 U.S.C. § 260, because Defendants set Plaintiffs' and the Collective Action Members' work schedules and pay and were aware that they were

working more than 40 hours per week.

126. Due to Defendants' FLSA violations, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### Violations of New York Labor Law
### (Failure to Pay Overtime Compensation)

127. Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

128. At all relevant times, Plaintiffs and each of the Collective Action Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

129. Defendants willfully violated Plaintiffs' and the Collective Action Member's rights by failing to pay them overtime compensation at rates at least one-and-one-half times the regular rate of pay for each hour worked in excess of forty hours per workweek in violation of the New York Labor Law §§ 650 et seq. and its supporting regulations in 12 N.Y.C.R.R. § 146.

130. Defendants' failure to pay Plaintiffs and the Collective Action Members overtime compensation was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663

and supporting regulations, because Defendants set Plaintiffs' and each of the Collective Action Members' work schedules and pay and were aware that they were working in excess of 40 hours per week.

131. Due to Defendants' New York Labor Law violations, Plaintiffs and each of the Collective Action Members are entitled to recover from Defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

**COUNT III**

**Violations of New York Labor Law**

**(Failure to Pay Minimum Wage)**

132. Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

133. At all relevant times, Plaintiffs and each of the Collective Action Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

134. Defendants willfully violated Plaintiffs' and each of the Collective Action Members' rights by failing to pay them compensation in excess of the statutory minimum wage in violation of the New York Labor Law §§ 190-199, 652 and their regulations.

135. Defendants' failure to pay compensation in excess of the statutory minimum wage was willful, and lacked a good faith basis,

within the meaning of New York Labor Law § 198, § 663 and supporting regulations, because Defendants set Plaintiffs' and each of the Collective Action Members' rate of pay and were aware that they were not compensating Plaintiffs and each of the Collective Action Members at the applicable statutory minimum wage.

136. Due to Defendants' New York Labor Law violations, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid minimum wage compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

### COUNT IV
### Violations of New York Labor Law
### (Failure to Pay Spread-of-Hours Compensation)

137. Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

138. At all relevant times, Plaintiffs and each of the Collective Action Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

139. Defendants willfully violated Plaintiffs' and the Collective Action Members' rights by failing to pay them an additional hour's pay at the minimum wage for each day they worked a shift lasting in excess of ten hours from start to finish, in

violation of the New York Labor Law §§ 650 et seq. and its regulations in 12 N.Y.C.R.R. § 142-2.4.

140. Defendants' failure to pay Plaintiff and the Collective Action Members the "spread of hours" premium was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 163 and supporting regulations.

141. Due to Defendants' New York Labor Law violations, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT V
### Violations of New York Labor Law — Wage Theft Prevention Act
### (Failure to Provide Wage Notices and Weekly Wage Statements)

142. Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

143. At all relevant times, Plaintiffs and each of the Collective Action Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

144. Defendants willfully violated Plaintiffs' and the Collective Action Members' rights by failing to provide them with the wage notices required by the Wage Theft Prevention Act when they were hired, or at any time thereafter, causing Plaintiffs and each

28

of the Collective Action Members to suffer financial harm as a result of their not being properly informed of their lawful rates of compensation.

145. Defendants willfully violated Plaintiffs' and the Collective Action Members' rights by failing to provide them with weekly wage statements required by the Wage Theft Prevention Act at any time during their employment, causing Plaintiffs and each of the Collective Action Members to suffer financial harm as a result of their not being properly informed of their lawful rates of compensation.

146. Due to Defendants' New York Labor Law violations relating to the failure to provide paystubs, Plaintiffs and each of the Collective Action Members are each entitled to recover from Defendants statutory damages of $250 per day, for each day by the defendant of their employment by Defendants, up to the maximum statutory damages.

147. Due to Defendants' New York Labor Law violations relating to the failure to provide wage notices, Plaintiffs and each of the Collective Action Members are each entitled to recover from Defendants statutory damages of $50 per day for each day of their employment by Defendants, up to the maximum statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

c. An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

d. A compensatory award of unpaid overtime compensation, at the statutory overtime premium rate, due under the FLSA and the New York Labor Law;

e. A compensatory award of unpaid minimum wage compensation, at the applicable statutory rate, due under the New York Labor Law;

f.     A compensatory award of unpaid spread-of-hours compensation, at the applicable statutory rate, due under the New York Labor Law;

g.     An award of liquidated damages as a result of Defendants' willful failure to pay the statutory minimum wage, overtime compensation pursuant to 29 U.S.C. § 216;

h.     An award of liquidated damages for the Defendants' New York Labor Law violations;

i.     An award of statutory damages for the Defendants' violation of the New York Wage Theft Prevention Act;

j.     Back pay;

k.     Punitive damages;

l.     An award of prejudgment and post-judgment interest;

m.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.     Such other, further, and different relief as this Court deems just and proper.

Dated: March 4, 2026
      New York, New York

                      */s/ Michael Samuel*
                      Michael Samuel (MS 7997)
                      THE SAMUEL LAW FIRM
                      1441 Broadway
                      Suite 6085
                      New York, New York 10018

(212) 563-9884
*Attorneys for Plaintiffs,*
*Individually and on behalf of an*
*FLSA collective action*